**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

In Re:

|  |  |  |
|---|---|---|
| **Ronald Lewis Madden**, | : | Case No. |
|  | : | Chapter 12 |
|  | : |  |
| Debtor. | : | Judge |

## CHAPER 12 PLAN OF REORGANIZATION

The Debtor in this case is Ronald Lewis Madden, a farmer as defined by the United States Bankruptcy Code, and proposes the following Chapter 12 Plan of Reorganization pursuant to 11 U.S.C. §1221 and other pertinent sections of the United States Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

1. The "Debtor in Possession" in this Chapter 12 case shall be Ronald Lewis Madden.
2. Any reference to "Chapter 12" shall mean 11 U.S.C. Chapter 12 of the United States Bankruptcy Code.
3. "Reorganization" shall mean the effort undertaken by this plan to reorganize the assets and debts of this debtor pursuant to the commencement of a Chapter 12 petition and action under the authority of the United States Bankruptcy Code.
4. Any reference to "Plan" shall refer to this Plan of Reorganization.
5. "Confirmation of Plan" shall mean the entry by which the Court confirms the Plan of Reorganization entered by this debtor an approved by the Court.
6. The "effective date" shall mean the date by which the Order of Confirmation becomes final and non-appealable.
7. Any reference to "the Court" in this case shall mean the United States Bankruptcy Court, for the Southern District of Ohio, Eastern Division, at Columbus, Ohio.
8. "Priority Claim" shall mean the claim of any general creditor that is entitled to priority in payment pursuant to Section 507 and other relevant sections of the United States Bankruptcy Code including, but not limited to, the professional fees as defined herein.

9. "Professional fees" shall mean any fees or costs allowed by this Court and that are payable to a person pursuant to order of this Court after proper application, including attorney fees of the debtor's attorney in accordance with 11 U.S.C. §503(b)(4) and 11 U.S.C. §330.

10. "Claim" is a right to payment whether or not such right is reduced to judgment, whether it is liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, secured or unsecured, which right arose or accrued prior to the date of confirmation. No claim that would otherwise be a claim shall be treated as a claim by this Plan unless the claim is filed with the Court on or before the bar date and is therefore properly perfected by the creditor.

11. As set forth above, an "allowed claim" shall be a claim that has been filed with the Bankruptcy Court in a timely fashion and before the bar date and to which no objection to its allowance has been filed within the time period fixed by the Bankruptcy Court. Allowed claims shall only include claims which are properly perfected and ordered to be paid by the court. No claim shall be an allowed claim unless it is timely filed so that the rights of the creditor are properly set forth and perfected.

12. "Operating expenses" shall mean all costs associated with producing income by the debtor as is set forth in the Bankruptcy Code and debtor's Chapter 12 Plan of Reorganization. Operating expenses, however, shall include all necessary repair, replacement costs, and reasonable allowances for the business expenses and future business expenses of the debtor.

13. "Disposable income" means all income received by the debtor annually after deducting from gross income all operating expenses, approved living expenses, Chapter 12 Plan payments, and other payments called for by the terms of this Plan of Reorganization, whether such payments are made through the Trustee or paid directly.

14. "Trustee" shall mean the entity appointed to serve in this case pursuant to 11 U.S.C. §1202. Frank M. Pees is the standing trustee for Chapter 12 cases in the Southern District of Ohio, Eastern Division, at Columbus, Ohio, and shall be the trustee at the inception of this case and so long as he continues to serve in that capacity.

## ARTICLE II
## SUBMISSION OF DEBTOR'S PROJECTED DISPOSABLE INCOME

As is required by the United States Bankruptcy Code for Chapter 12 cases, the future earnings of the debtor during the life of this Plan are submitted to the supervision and control of the Trustee as is necessary for the execution of the Plan. The debtor's projected earnings are attached hereto as "Exhibit A". Additionally, all of the debtor's disposable income will be applied to make payments under the Plan pursuant to 11 U.S.C. §1225(b)(1)(C) and 11 U.S.C. §1225(b)(2)(A) and §1225(b)(2)(B).

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

1. **Priority Claims**. Priority claims as specified under 11 U.S.C. §507 shall be paid on a monthly basis after confirmation, but may be paid at the same dividend as general unsecured creditors as permitted by 11 U.S.C. §1222(a)(2)(A).

2. **Secured Claims**. Secured claims shall be paid through this Plan in a manner permitted and allowed by the United States Bankruptcy Code. Secured claims shall be those which existed as of the date of filing of this petition and which are finally allowed or approved by the Court. Each shall receive treatment whereby it receives payment equal to the collateral that secures the repayment of its claim. Each secured claim will be addressed hereinafter. Pursuant to this Plan, no creditor, whether secured or unsecured, shall be entitled to payment unless the creditor properly files a timely and perfected proof of claim form. Secured creditors who fail to file a timely Proof of Claim shall release and cancel their lien of record upon discharge of Debtor.

3. **Unsecured Claims**. Unsecured claims will be paid in accordance with the United States Bankruptcy Code. Unsecured creditors shall be paid a dividend of **3%**. Any and all unsecured claims filed and perfected on or before the bar date shall share in the treatment set forth hereinafter for unsecured claims. No unsecured creditor, even if listed on the petition, will be paid in the absence of a timely perfected claim through the filing of a claim with the Bankruptcy Court.

4. **Administrative Claims**. Expenses of administration shall be paid in the case to the extent permitted by confirmation of the Plan by the United States Bankruptcy Court, or other Order of this Court. Those administrative claims shall include, but shall not be limited to, trustee compensation, attorney fees of the debtor and court costs.

## ARTICLE IV
## HISTORY OF THE CASE

Ronald Lewis Madden has been a farmer for all of his adult life, having been engaged in farming for thirty-three (33) years at his farming operation. His operation consists of farming approximately 128 acres of family owned land and an additional approximately 600 acres of leased land. His farming operation consists of raising and harvesting grain and hay. The debtor believes his farming income will produce a sufficient amount of regular and dependable income such that the payments called for under the terms of the Plan will be made.

It is unlikely that the debtor would have needed to file for Bankruptcy protection except for the default on the second mortgage obligation securing all of Debtor's farming assets and his residence, and the attendant threat of repossession of assets and seizure of the crop proceeds used in financing and conducting the farming operation. Repossession of equipment and seizure of assets would have prevented his ability to generate income through farming and result in the loss of the farm. Debtor and counsel believe that through an orderly and systematic reorganization, creditors will be paid, the debtor will retain his assets and equipment, and his farming operation will be able to succeed financially.

## ARTICLE V
## PRIORITY CLAIMS

Priority claims under 11 U.S.C. §507 shall be paid on a monthly basis after confirmation. At the time of filing of the Petition, Debtor had the following priority claims listed in the Schedules:

**Internal Revenue Service.** The Internal Revenue Service has assessed federal unemployment taxes (940) due in the amount of $300.00 for the tax year ending December 31, 2014. This claim shall be paid as a general unsecured claim and discharged upon completion of payments under the Plan in accordance with 11 U.S.C. §1222(a)(2)(A).

**Internal Revenue Service.** The Internal Revenue Service has also assessed federal withholding taxes (941) due in the amount of $7,455.00 for the tax year ending December 31, 2016. However, Debtor disputes this claim as Debtor did not have any employees during the tax year 2016 and did not withholding taxes, nor is he subject to, withholding taxes. This claim shall be paid as a general unsecured claim and discharged upon completion of payments under the Plan in accordance with 11 U.S.C. §1222(a)(2)(A).

**Ohio Bureau of Workers Compensation**. The Ohio Bureau of Workers Compensation claims premiums due for the period June 1, 2016 – December 31, 2016 in the approximate amount of $1,400.00. This claim shall be paid as a general unsecured claim and discharged upon completion of payments under the Plan.

# ARTICLE VI
# SECURED CLAIMS

**The Community Bank**. The Debtor has 3 secured claims with The Community Bank listed in his schedules, which shall be paid as follows:

1. The Community Bank is the first mortgage holder relating to Debtor's residence and farm land, located at 7999 Norfield Road, Zanesville, Ohio, with an appraised value of $585,037.50. Debtor owes The Community Bank approximately $384,500.00 on the first mortgage claim. Debtor's loan is current as of the cate of filing. Debtor shall continue to make the mortgage payments in the monthly average of $2,333.00 per month ($14,000.00 semi-annually) directly to The Community Bank for the duration of the Plan.

2. The Community Bank holds a blanket lien on the following pieces of equipment: International 475 18ft Tandem Disc, Stoltzfus TV20H8D T/A 16000lb Fertilizer Spreader, 2012 Willmar Super 800 Fertilizer Spreader, GEHL MS1315 T/A 1620 Gallon Manure Spreader, Bush Hog 2715L 15ft Rotary Mower, John Deere 328 Square Baler, Kuhn GA4221GTH 12ft Hay Rake, Kuhn GA4221GTH 12ft Hay Rake, Maxilator Accumagrapple Bale Grapple Hay Equipment, Stoltzfus BM10 10 Bale Mover Bale Mover, EZ Trail 510 500+/- Bushel S/A Grain Cart, J&M 250+7 275 +/-

Bushel T/A Grain Wagon, Westfield MK100-61 Mechanical Swing Grain Auger, Farm All Super C Tractor, 1986 Case IH 1660 4x4 Combine, Case IH 863 30in 6 Row Corn Header, 1997 Great Plains 1500-2203-03 15ft Double Disc No Till Drill, 1998 Homemade 22' Gooseneck Trailer, 1997 Moritz 25' Gooseneck Trailer, 2010 Homemade 18' Gooseneck Trailer, 2001 Appalachian Dump Trailer, 1990 Livestock Trailer, and miscellaneous tools, which Debtor values at a combined total of $70,500.00 based upon the current condition of each piece of equipment.  The debtor owes The Community Bank approximately $156,180.00 on the claim, which shall be paid as secured to the value of the collateral, with interest at a rate of 4%, over the five-year Plan, and the remaining balance of approximately $85,680.00 to be deemed wholly unsecured and paid pro-rata with the other unsecured non-priority creditors in the Plan. Except as specifically modified by this Plan, all other terms and conditions of this contract shall remain in full force and effect, and the creditor shall retain its lien until the secured claim has been paid in full through the Plan, at which time the creditor shall release its liens of record.  All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

3. The Community Bank is the holder of a second mortgage/blanket lien secured by the debtor's residence and farm located at 7999 Norfield Road, Zanesville, Ohio, crops and hay in the fields, crops and hay harvested, and crops and hay harvested and sold.  As the appraised value of the real estate is $585,037.50, and as the debtor owes The Community Bank approximately $384,500.00 on the first mortgage claim, the claim shall be paid as secured to the remaining value of the real estate ($200,537.50), plus the value of the seed, fertilizer and crops and hay in the fields ($125,250.00), plus the value of  the crops and hay harvested and sold ($30,007.23), plus the value of the crops harvested and not yet sold ($28,539.00), for a total secured claim in the amount of $384,333.73, to be paid with interest at a rate of 4%, over the five-year Plan, and the remaining balance of approximately $368,866.27 to be deemed wholly unsecured and paid pro-rata with the other unsecured non-priority creditors in the Plan.  Except as specifically modified by this Plan, all other terms and conditions of this contract shall

remain in full force and effect, and the creditor shall retain its lien until the secured claim has been paid in full through the Plan, at which time the creditor shall release its liens of record.  All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

**John Deere Financial.**  The Debtor has 5 secured claims with John Deere Financial listed in his schedules, which shall be paid as follows:

1. John Deere Financial is the holder of a secured agreement relating to the 2014 John Deere Hydra Swing Mower Conditioner, which Debtor values at $15,500.00 based upon its current condition.  The debtor owes John Deere Financial approximately $14,910.00 on the claim, which shall be paid as fully secured, with interest at a rate of 4%, over the five-year Plan.  Except as specifically modified by this Plan, all other terms and conditions of this contract shall remain in full force and effect, and the creditor shall retain its lien until the claim has been paid in full through the Plan, at which time the creditor shall release its lien of record.  All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

2. John Deere Financial is the holder of a secured agreement relating to the 2012 John Deere Round Baler, which Debtor values at $15,000.00 based upon its current condition.  The debtor owes John Deere Financial approximately $5,450.00 on the claim, which shall be paid as fully secured, with interest at a rate of 4%, over the five-year Plan.  Except as specifically modified by this Plan, all other terms and conditions of this contract shall remain in full force and effect, and the creditor shall retain its lien until the claim has been paid in full through the Plan, at which time the creditor shall release its lien of record.  All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

3. John Deere Financial is the holder of a secured agreement relating to the 2014 Frontier Hay Tedder, which Debtor values at $6,000.00 based upon its current condition.  The debtor owes John Deere Financial approximately $7,100.00 on the claim, which shall

be paid as secured to the value of the collateral, with interest at a rate of 4%, over the five-year Plan, and the remaining balance of approximately $1,100.00 to be deemed wholly unsecured and paid pro-rata with the other unsecured non-priority creditors in the Plan. Except as specifically modified by this Plan, all other terms and conditions of this contract shall remain in full force and effect, and the creditor shall retain its lien until the secured claim has been paid in full through the Plan, at which time the creditor shall release its lien of record. All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

4. John Deere Financial is the holder of a secured agreement relating to the 2014 John Deere 6115 Utility Tractor, which Debtor values at $57,800.00, and the John Deere 6105 Tractor, which Debtor values at $57,800.00 based upon their current condition. The debtor owes John Deere Financial approximately $125,540.00 on the claim, which shall be paid as secured to the value of the collateral, with interest at a rate of 4%, over the five-year Plan, and the remaining balance of approximately $9,940.00 to be deemed wholly unsecured and paid pro-rata with the other unsecured non-priority creditors in the Plan. Except as specifically modified by this Plan, all other terms and conditions of this contract shall remain in full force and effect, and the creditor shall retain its lien until the secured claim has been paid in full through the Plan, at which time the creditor shall release its lien of record. All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

5. The debtor is currently leasing the 2015 John Deere 615O Utility Tractor under a lease-to-own agreement, which Debtor values at $75,800.00 based upon its current condition. The debtor elects to exercise the option to purchase the collateral, and owes John Deere Financial approximately $88,000.00 on the claim, which shall be paid as secured to the value of the collateral, with interest at a rate of 4%, over the five-year Plan, and the remaining balance of approximately $12,200.00 to be deemed wholly unsecured and paid pro-rata with the other unsecured non-priority creditors in the Plan. Except as specifically modified by this Plan, all other terms and conditions of this contract shall

remain in full force and effect, and the creditor shall retain its lien until the secured claim has been paid in full through the Plan, at which time the creditor shall release its lien of record. All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

**Century National Bank.** The Debtor has 1 secured claim with Century National Bank, which is secured by the 2006 Dodge Ram 3500 Laramie and 2000 International 4900 Truck. The scheduled value for the 2006 Dodge Ram 3500 Laramie is $10,000.00, and the scheduled value for the 2000 International 4900 Truck is $13,700.00, based upon each vehicle's current mileage and condition. The debtor owes Century National Bank approximately $14,160.00 on the claim, which shall be paid as fully secured, with interest at a rate of 4%, over the five-year Plan. Except as specifically modified by this Plan, all other terms and conditions of this contract shall remain in full force and effect, and the creditor shall retain its lien until the claim has been paid in full through the Plan, at which time the creditor shall release its liens of record. All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

**CLAAS Financial Services.** The Debtor has 1 secured claim with CLAAS Financial Services, which is securing a 12 Row Corn Header and 30 Foot Header Transport. The scheduled value for the 12 Row Corn Header is $23,000.00, and the scheduled value for the 30 Foot Header Transport is $3,800.00, based upon the current condition of each piece of equipment. The debtor owes CLAAS Financial Services approximately $67,000.00 on the claim. The Debtor shall surrender both pieces of equipment to the secured creditor, and any remaining deficiency balance due on the claim shall be paid pro-rata with the other unsecured non-priority creditors. All payments to this creditor shall be paid through the Trustee and shall be subject to the Trustee's fee or compensation pursuant to its annual order of trustee fees.

## ARTICLE VII
## NON-PRIORITY UNSECURED CLAIMS

The debtor shall pay claims in this class in five (5) annual payments in an amount to be determined upon the completion of the filing of any claims relating to these unsecured debts.

Unsecured creditors shall receive a dividend of **3%**.  Upon receipt by the Chapter 12 Trustee of the annual unsecured payment, the Trustee shall first subtract from the gross amount the Trustee fee or compensation as set by his annual compensation order and then shall distribute the balance on a pro rata basis to the unsecured creditors who have perfected their claims.

## ARTICLE VIII
## PAYMENTS TO AND THROUGH THE CHAPTER 12 TRUSTEE

The debtor proposes to pay any priority and non-priority unsecured claims that are determined to exist through the Chapter 12 Trustee's office.  The debtor proposes to pay any payments due and payable under the terms of this Plan to Century National Bank, CLAAS Financial Services, John Deere Financial, and The Community Bank through the Chapter 12 Trustee's office.

## ARTICLE IX
## ATTORNEY COMPENSATION

Professional fees shall mean any fees or costs allowed by this Court and that are payable to a person pursuant to order of this Court after proper application, including attorney fees of the debtor's attorney in accordance with 11 U.S.C. §503(b)(4) and 11 U.S.C. §330.  The Debtor has paid $4,000.00 of attorney fees, which are estimated to exceed $8,000.00 over the duration of the Plan.

## ARTICLE X
## DISPOSABLE INCOME

The debtor shall prepare and present to the Chapter 12 Trustee on an annual basis a disposable income report showing whether pursuant to the provisions of Chapter 12 additional disposable income payments are due.  Upon the preparation and filing of the disposable income reports for each of the five years, and upon payment of the amount set forth by the disposable income report, the statutory provisions relating to disposable income shall be deemed to have been met.

    The debtor shall make monthly Plan payments to the Chapter 12 Trustee, as follows:

    **$1,350.00** per month commencing **May 14, 2017 – September 14, 2017**

    **$22,500.00** per month from **October 14, 2017 – January 14, 2018** (from crop proceeds)

    **$1,350.00** per month **February 14, 2018 – September 14, 2018**

    **$22,500.00** per month from **October 14, 2018 – January 14, 2019** (from crop proceeds)

    **$1,350.00** per month **February 14, 2019 – September 14, 2019**

    **$22,500.00** per month from **October 14, 2019 – January 14, 2020** (from crop proceeds)

    **$1,350.00** per month **February 14, 2020 – September 14, 2020**

    **$22,500.00** per month from **October 14, 2020 – January 14, 2021** (from crop proceeds)

    **$1,350.00** per month **February 14, 2021 – September 14, 2021**

    **$22,500.00** per month from **October 14, 2021 – January 14, 2022** (from crop proceeds)

    **$1,350.00** per month **February 14, 2022 – April 14, 2022**

Debtor shall also tender a lump sum payment estimated to be in the amount of $425,000.00 from the refinance of his residence/farm prior to month 60 of the Plan, upon proper application and approval by the Court.

## ARTICLE XI
## LIQUIDATION ANALYSIS

    Examination of the debtor's assets, income and expenses shows that secured creditors are receiving, under the terms of this plan, an amount equal to the amount they each would receive in the event of a liquidation based on the market values as scheduled by the debtor, and taking into account the costs of liquidation and existing market conditions. Unsecured creditors shall receive a dividend of **3%**.

## ARTICLE XII
## LIEN RETENTION

    As set forth elsewhere in this Plan, each secured creditor shall retain its lien, its priority, and its collateral protection and perfection without the necessity of refiling or re-perfecting such security interest. This shall be true for the life of the five-year Plan and extends beyond the five years for any claims not fully paid or resolved through this proceeding.

## ARTICLE XIII
## LENGTH OF PLAN

In accordance with 11 U.S.C. §1222(C), this Plan shall be for a period of five years.

## ARTICLE XIV
## ADEQUATE PROTECTION

The debtor will not be providing any separate adequate protection payments other than are provided through scheduled Plan payments.

## ARTICLE XV
## DEFAULTS AND THE CURING OF DEFAULTS

All defaults or arrearages previously existing within any creditor's classification shall be treated as cured upon and under the terms of this Plan if the Plan is confirmed, completed, and a discharge is received.

## ARTICLE XVI
## JURISDICTION OF THE COURT

The Court will retain jurisdiction until this Plan has been fully consummated for at least the following purposes:

1. The classification of the claims of any creditors and the re-examination of the claims which have been allowed for the purposes set forth in Chapter 12 of the United States Bankruptcy Code.
2. To determine any and all questions and disputes regarding title to assets of any causes of actions, controversies, disputes, or conflicts relating to such assets.
3. To correct any defect, to cure any omission, or to reconcile any inconsistencies in this Plan or in the Order of Confirmation as may be necessary to carry out the purposes and intent of this Plan.
4. To consider any modifications of the Plan after confirmation pursuant to Bankruptcy Rules or the United States Bankruptcy Code.
5. To enforce and interpret the terms and conditions of this Plan.
6. To conclude this Plan by the entry of an Order which terminates the case and grants the debtor a discharge.

## ARTICLE XVII
## FEASIBILITY OF THE PLAN

The debtor's projections relating to income and expense for his first year of operation are attached to this Plan as "Exhibit A".  As such, the debtor believes that the Plan is feasible.

## ARTICLE XVIII
## GENERAL PROVISIONS

Debtor will be able to make all payments under the Plan and to comply with the Plan.  Upon the effective date of this Plan, the property of the estate shall revest in Debtor pursuant to 11 U.S.C. §1227(b) and the Automatic Stay granted pursuant to 11 U.S.C. §362 shall remain in full force and effect until further Order of this Court.  This Court shall retain jurisdiction over proceedings relative to this Chapter 12 case.

## ARTICLE XIX
## FINAL ARTICLE

At the conclusion of this five-year Plan, each unsecured creditor shall be deemed paid in full and the debtor shall receive a discharge of the debt.  Except as specifically modified by this Plan, all other terms and conditions of long term secured claims shall remain in full force and effect and the secured creditors shall retain their liens.  This Plan shall last no longer than sixty (60) months.

    Respectfully submitted,

    /s/ Crystal I. Zellar
    Crystal I. Zellar  (#0038785)
    Shelley E. Hibburt (#0091736)
    **Zellar & Zellar, Attorneys at Law, Inc.**
    720 Market Street
    Zanesville, Ohio 43701
    Telephone:  (740) 452-8439
    Facsimile:  (740) 450-8499
    mail@ZellarLaw.com
    Counsel for Debtor

APPROVED:

/s/ Ronald Lewis Madden    4/14/2017
**Ronald Lewis Madden**, Debtor    Date

**Exhibit A**

**Annual Income and Expense Projection for farm operation**

| | |
|---|---:|
| Bank Service Charges | $ 140.00 |
| Transportation | $ 9,190.00 |
| Chemicals | $ 8,300.00 |
| Crop Insurance | $22,389.00 |
| Fertilizer | $11,319.00 |
| Fuel | $20,070.00 |
| Insurance | $ 7,500.00 |
| Labor | $48,230.00 |
| Meals | $ 162.00 |
| Telephone/Utilities | $ 4,700.00 |
| Legal/Accounting/Professional Fees | $ 1,798.00 |
| Land Leases | $49,200.00 |
| Equipment Repairs / Maintenance | $11,415.00 |
| Seed/Plants | $25,000.00 |
| Supplies | $ 2,922.00 |
| Income Taxes | $ 195.00 |
| **TOTAL** | **$222,530.00** |

Gross Projected Annual Income:         $371,907.00
Projected Annual Operating Expenses:   -$222,530.00
                                        $149,377.00 Net Projected Annual Income